David McMAHON and Patricia McMahon, his wife; Robert Wicht and May Wicht, his wife; William Yedesko and Kathryn M. Yedesko; David Koziel and Suzy Koziel, his wife; Robert Sabol and Gina Sabol, his wife and James Miller and Barbara Miller, his wife,

v.

### KINGSTON TOWNSHIP BOARD OF SUPERVISORS.

**Pennsylvania Cellular Telephone Corporation, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2000.

Decided April 5, 2001.

Catherine E. Naughton, Center Valley, for appellant.

Mark P. McNealis, Sweet Valley, for appellees.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FLAHERTY, Judge and LEADBETTER, Judge.

McGINLEY, Judge.

The issue in this appeal is whether a 150–foot cellular communications monopole (monopole) constitutes a semi-public use and thus is permitted as a conditional use in an R–2 residential zoning district.

Pennsylvania Cellular Telephone Corp., trading and doing business as Cellular One (Cellular One), appeals from an order of the Court of Common Pleas of Luzerne County (common pleas court) that reversed the decision of the Board of Supervisors of Kingston Township (Board) and granted Cellular One's conditional use application.

Cellular One is a private for profit corporation licensed by the Federal Communications Commission (FCC) to sell wireless communication services in the Luzerne County area. Market conditions and competition dictate Cellular One's rates, they are not subject to governmental regulation. Notes of Testimony, March 11, 1998 (N.T.) at 56; Reproduced Record (R.R.) at 107a.

On January 22, 1998, Cellular One applied for a conditional use and proposed construction of the monopole in an R–2 two family residential zoning district on a two acre parcel (property) that formerly served as the municipal building and the fire station. The property currently accommodates an office building and parking area. The Township owns the property and a license agreement with Cellular One

was already in place. N.T. at 52; R.R. at 103a.

The monopole was to be surrounded by an eight-foot chain link fence topped with barbed wire, to be accompanied by an equipment building constructed within the existing municipal building. Application for Conditional Use and Supplemental Statement (Application) at 1–2; Reproduced Record (R.R.) at 23a–24a. Panel antennae were to be located on the top of the monopole. N.T. at 8; R.R. at 79a.

Cellular One characterized its proposed tower as a "semipublic use." Such a use is permitted as a conditional use in the R–2 zoning district under Section 347 of the Kingston Township Zoning Ordinance (Ordinance). In fact, Section 347 authorizes "public and semipublic uses" as conditional uses in all zoning districts when they meet the applicable standards. Ordinance, § 347 at 360.2; R.R. at 361a. Previously in 1997, the Township had granted a conditional use to another cellular provider, Omnipoint Communications, which placed a 100 foot monopole in an industrial zoning district, and defined it as a "semipublic" use. N.T. at 42–43; R.R. at 93–94.

Cellular One testified that as long as the monopole possessed the structural capacity to accommodate additional antennae and the load did not interfere with its operation, it would make the monopole available to the Township for municipal use at the Township's cost. N.T. at 39; R.R. at 90a.

Initially, the Planning Commission recommended denial of the conditional use. N.T. at 8; R.R. at 59a. As required for conditional use approval, a duly advertised public hearing was held before the Board on March 11, 1998. After a second hearing held on March 25, 1998, the Board approved the conditional use.

The Board made the following relevant findings of fact:

1. The Applicant, Pennsylvania Cellular Telephone Corp., trading and doing business as Cellular One, is a private corporation engaged in the business of selling and providing cellular communications systems and services to the public. Applicant is licensed and governed by the regulations of the Federal Communications Commission ("FCC").

. . . .

3. The Applicant is the Licensee of a portion of land owned by Kingston Township located off Route 309 and Carverton Road, Kingston Township, Luzerne County, Pennsylvania ("Premises"). The Premises contains [sic] over two (2) acres and currently contains [sic] an office building and related parking area (formerly used as the municipal office and fire station.)

4. The area of disturbance will be ± 335 square feet.

5. The Applicant is proposing to place a 150 foot cellular communications monopole on the Premises to which it will attach cellular antennas [sic].

6. The Applicant is also proposing to install and maintain an unmanned, one-story, precast concrete, 12′x 20′ equipment building to be housed within an office in the existing building.

7. Space on the monopole has been offered for use by County and municipal police, fire and emergency services.

. . . .

9. The Premises is [sic] located in the R–2 Zoning District and is governed, inter alia, by the provisions of the Ordinance regulating uses in the R–2 Zone.

10. "Public or Semi–Public uses" are permitted as conditional uses in the R–2 District. Ordinance § 347(1).

11. The proposed facility was determined by the Township Zoning Officer to be a "public or semi-public use."

12. Semi-public uses are not defined in the Ordinance.

13. The Applicant is not seeking to be considered a "utility" or "public utility" use.

14. "Utility" and "public utility" uses are specific, designated uses not permitted in the R–2 District.

15. The Applicant is a private corporation with a franchise in the Kingston Township area that provides cellular telephone communication services to the public under the regulation of the FCC.

. . . .

19. The Applicant is a private entity performing a public service by providing services to an indefinite public which has a legal right to demand and receive its services without discrimination.

. . . .

25. A 150 foot monopole is necessary in order for the Applicant to maintain its required service levels and to provide necessary coverage.

. . . .

27. Ordinance Section 504(2) establishes a maximum building height limitation of 35 feet for all *principal buildings* in the R–2 District.

. . . .

53. There are no height maximums in the Ordinance that are applicable to the monopole.

Board of Supervisors of Kingston Township Opinion (Opinion) at 1–4.

Objecting area residents [1] (appellees) appealed to the common pleas court. On appeal, the common pleas court reversed the Board's decision. The common pleas court concluded that the term "semipublic uses" did not include the monopole. "[T]he Court is persuaded that the term was intended to include uses of a welfare and educational nature. . . ." Common Pleas Court Opinion, July 19, 1999, at 4. The common pleas court further concluded that even if the proposed monopole was considered a semipublic use, Cellular One had to obtain a variance from the 35–foot maximum height restriction applicable to the R–2 zoning district.

■ On appeal [2] Cellular One contends that (1) the monopole and related facility is a semipublic use permitted as a conditional use in the R–2 zoning district; (2) it met all the standards for a conditional use, and (3) the maximum height restriction for a principal building and requirements for an accessory building or structure are inapplicable to the proposed monopole.

■ Whether a proposed use falls within a given category specified in a zoning ordinance is a question of law and subject to review on that basis. *Crary Home v. Defrees,* 16 Pa.Cmwlth. 181, 329 A.2d 874, 876 (1974). The issue is one of statutory construction, it is this Court's function to determine the intent of the legislative body which enacted the ordinance. *Id.*

■ An ordinance must be construed to give effect to all its provisions. It is appropriate to construe any phrase or word with regard to context and the lan-

1. Objecting area residents are David McMahon and Patricia McMahon, his wife, Robert Wicht and May Wicht, his wife, William Yedesko and Kathryn M, Yedesko, David Koziel and Suzy Koziel, his wife, Robert Sabol and Gina Sabol, his wife and James Miller and Barbara Miller, his wife.

2. This Court's scope of review in zoning cases, where, as here, the trial court did not take any additional evidence, is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Teazers, Inc. v. Zoning Board of Adjustment of City of Philadelphia,* 682 A.2d 856 (Pa. Cmwlth.1996).

guage of the entire ordinance, if possible. *Bell Atlantic Mobile Systems v. Borough of Baldwin,* 677 A.2d 363, 365 (Pa.Cmwlth. 1996). Therefore, we must analyze the relevant provisions of the Township's zoning ordinance to assess the merits of Cellular One's argument.

The monopole is to be located in an R–2 Two Family District. The following are permitted uses in an R–2 Two Family District: all permitted uses in single-family residential districts, duplexes, customary accessory buildings and home occupation as a special exception. Ordinance, § 504 at 366; R.R. at 367a.

■ Cellular One argues that the use is authorized as a conditional use under Section 347 of the Ordinance, which states, "public and semipublic uses are permitted as conditional uses in all zoning districts pursuant to standards and criteria expressed in this Chapter 27, and Part 7, § 709 of this Chapter 27...." Ordinance, § 347 at 360.2; R.R. at 361a.

Section 103 of the Ordinance sets forth the purposes of the regulations and districts:

> The zoning regulations and districts as herein set forth are made in accordance with the Comprehensive Land Use Plan of Kingston Township, with consideration for the character of the Township, its various parts and the suitability of the various parts for particular uses and structures, and in order to promote, protect and facilitate the public health, safety and welfare of the inhabitants of Kingston Township and of the public generally....

Ordinance, § 103 at 331; R.R. at 328a.

Section 201 of the Ordinance defines public use as "use of any land, water or buildings by a municipality, public body or board, commission or authority, county, state or the federal government or any agency thereof for a public service purpose." Ordinance, § 201 at 342; R.R. at 339a. "Public Grounds" are defined in the Ordinance as "(A) Parks, playgrounds, trails, paths and other recreational areas and other public areas; (B) Sites for schools, sewer treatment, refuse disposal and other publicly owned or operated facilities; and (C) Publicly owned or operated scenic and historic sites." Ordinance § 201 at 341; R.R. at 338a.

While the Ordinance does not define "semipublic," Webster's Third New International Dictionary defines it as "having some of the features of a public institution." Webster's Third New International Dictionary 2064 (1986).

In reviewing these definitions, the Court is convinced, as was the common pleas court, that the term "semipublic" does not include a cellular monopole owned by a private for profit corporation such as Cellular One. The public uses (and by definition, the semipublic uses) set forth above all are supported in whole or in part by public dollars, either tax revenues or charitable contributions, not by sales revenues or private financing. The Court agrees with the common pleas court that the drafters of the Ordinance did not intend the operative definition of semipublic to include every enterprise that simply offers services to the public. If that were the case then any retail establishment would qualify as a conditional use subject to the standards at Chapter 27 of the Ordinance. Accordingly, the Court agrees with the common pleas court that the Board committed an error of law in determining that this proposed monopole constitutes a semipublic use under the Ordinance. To determine otherwise would destroy the underlying purpose of the Ordinance and create chaos rather than promote order.

■ Assuming arguendo, that the Board correctly determined that the conditional

use should be granted, the second hurdle for Cellular One is to establish that no height or setback variances were required. The Board found that the Ordinance did not regulate the height of the proposed use.

Cellular One argues that it is exempt from the height limitation in an R–2 zone, which is a maximum of thirty-five feet for buildings, because the Ordinance defines building as a structure with a roof and the monopole does not have a roof. Therefore, Cellular One concludes the monopole is not a building and not subject to the height limitations. Further Cellular One asserts that the height limitation does not apply to the monopole because the monopole must be higher than thirty-five feet to be useful.

However, the common pleas court was persuaded that under the terms of the Ordinance a variance was required for the monopole and that it would be subject to height restrictions. The common pleas court stated:

> In addition, even if the Court were to have found the monopole to be a semi-public use, it is unconvinced that the structure could be accommodated without the need for variances as required by § 347 and § 601(B) or that it would not be subject to the height restrictions with the [sic] respect to structures in an "R–2" District. *Vanguard [Cellular System, Inc. v. Zoning Hearing Board of Smithfield Township,]* 130 Pa. Cmwlth. 371, 568 A.2d [703, 708, petition for allowance of appeal denied, 527 Pa. 620, 590 A.2d 760 (1990)]. To accept the Intervenor's position would be to hold that a 150 foot monopole could be placed in *any zoning district* without reference to any height restrictions so

long as any required setbacks were met. Such a result does not seem logical or in accord with the decisions of our appellate courts. See *Vanguard,* 568 A.2d at 708.

Common Pleas Court Opinion at 5.

Although not specified in the common pleas court opinion, this Court is persuaded by appellee's interpretation of the Ordinance. The monopole is subject to regulation as an accessory structure and as such required variances from several Ordinance sections to locate in an R–2 residential district.

The monopole meets the definition of "structure" as set forth in the Ordinance. "Structure—any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land." Ordinance, § 201 at 342.1; R.R. at 333a.

A "structure" is also included within the definition of "Accessory Building a secondary residence, garage or other building or structure subordinate to and not forming an integral part of the main or principal building on the lot or parcel but pertaining to the use of the main building."[3] Ordinance, § 201 at 333; R.R. at 330a.

The Court agrees with appellees that the general criteria in Section 601 of the Ordinance, relative to a conditional use, mandate that the use be accommodated on the site without variances. Ordinance, § 601(B) at 383; R.R. at 384a. Three sections of the Ordinance set height and yard limitations for accessory structures in residential zoning districts and require variances for the proposed monopole if located in the R–2 residential zoning district.

---

**3.** The monopole is a structure, it is subordinate to and not part of the main building (the former municipal building, now office building) and since the main building does include the equipment room for the monopole, it pertains to the use of the main building.

Unattached accessory structures in "A–1" and "R" districts may be erected within a rear yard, provided they conform with the following:

Maximum Height—one and one-half (1½) stories or fifteen feet (15') except in "A–1" districts.

An accessory structure shall not be less than ten feet (10') from a principal structure.

Not more than two (2) accessory structures, including a private garage, shall be located in any "R" district, on one lot.

Ordinance, § 343 at 359; R.R. at 358a

Section 327 Overhanging or Extruding Projections states:

One Family Residential Districts, Two Family Residential Districts, Multi–Family Residential and Mobile Home Districts—Every part of a yard or court shall be open from its lowest point to the sky unobstructed except for the customary projection of sills, belts, courses, cornices ornamental features, and eaves; provided however, that none of the above projections shall extend into a yard more than thirty-six inches (36"). Open or enclosed fire escapes, outside stairways, balconies, chimneys flues or other projections shall not extend into any yard except that uncovered steps may project not more than three feet (3') into the yard.

Ordinance, § 327 at 354; R.R. at 353a.

Section 303 provides:

No accessory building in residential districts shall be erected in any required court or any yard other than a rear yard, except as provided hereafter. An accessory building may be erected as part of a principal building or if at least six (6') therefrom, may be connected thereto by a breezeway or similar structure, provided all yard requirements of this Chapter for a principal building are complied with.

Ordinance, § 303 at 344; R.R. at 343a.

A monopole is quite different from the listed projections and such projections are limited to a height of thirty-six inches. Moreover, the qualifications as to yard encroachments cannot be interpreted to negate clear height restrictions applicable to any structure in a residential district regardless of whether the structure is principal, secondary or accessory. If Cellular One's interpretation of the Ordinance were correct then any cellular provider in the Township would be authorized to attach a tower or monopole to any improvement in a residential zoning district without any limitation whatsoever, a result not intended by the Ordinance.

Therefore, the common pleas court correctly concluded that the drafters of the Ordinance intended that height maximums and setback requirements apply in an R–2 zoning district. Based on these requirements a variance would be necessary to locate the monopole in the R–2 zoning district. Cellular One failed to establish that a conditional use may be accommodated on the site without a variance.

Accordingly, we affirm the decision of the common pleas court.

## ORDER

AND NOW, this 5th day of April, 2001, the decision of the Court of Common Pleas of Luzerne County in the above-captioned matter is affirmed.

Judge LEADBETTER dissents.