# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Laura Baltra    :
From the Decision of the New    :
Britain Township Zoning Hearing    :
Board    :   No. 158 C.D. 2015
    :   Argued: October 6, 2015
Appeal of: Board of Supervisors    :
of New Britain Township    :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**[1]         **FILED: December 14, 2015**

In this zoning appeal, New Britain Township (Township) asks whether the Court of Common Pleas of Bucks County[2] (trial court) erred in reversing a decision of the New Britain Township Zoning Hearing Board (ZHB) that upheld a zoning enforcement notice issued against Laura Baltra (Landowner) for conducting an automobile repair garage on her residential property. The Township argues that, in reversing the ZHB, the trial court misidentified the issue before it and applied an incorrect standard of review. It also contends the record contains substantial evidence that supports the ZHB's denial of Landowner's appeal of the enforcement notice. Upon review, we affirm the trial court.

---

[1] This case was reassigned to the author on October 15, 2015.

[2] The Honorable James M. McMaster presided.

# I. Background

Landowner and her son reside in a single-family residence located at 200 Forest Park Drive, Chalfont, New Britain Township (subject property). The subject property lies in a residential (RR) zoning district and is part of a planned residential development.

In November 2013, the Township Zoning Officer (zoning officer) issued Landowner an enforcement notice, charging her with numerous violations related to the subject property. Landowner appealed. A hearing ensued before the ZHB.

At the hearing, the ZHB heard testimony from the zoning officer and three objectors, two nearby landowners and a former nearby landowner. Counsel appeared on behalf of Landowner; however, Landowner did not appear in person and did not present any witness testimony. Counsel for Landowner presented titles and registrations for six vehicles, which are registered to Landowner or her son.

The only issue the zoning officer pursued, and thus the only issue the ZHB considered at the hearing, was whether Landowner violated Section 27-901 of the New Britain Township Zoning Ordinance of 1995 (zoning ordinance) by operating an "Automobile Repair" use as defined in Section 27-305(J21), which is not permitted in the RR district. ZHB Op., 3/31/14, Finding of Fact (F.F.) No. 19. To that end, at the ZHB hearing, the following colloquy took place between the Township Solicitor and the zoning officer:

**Q.** And the only item remaining of this [enforcement] notice that's still of issue is whether or not a J21 [Automobile Repair] use is being operated on the [subject] property?

**A.** Correct.

Reproduced Record (R.R.) at 10a.[3]

After the hearing, the ZHB issued a decision in which it determined that, based on the objectors' credible testimony, the activities conducted on the subject property constituted an "automobile repair" use under the zoning ordinance. ZHB Op., Concl. of Law No. 14. The ZHB explained the objectors credibly testified: they observed multiple vehicles moved to and from the subject property; they heard sounds coming from the subject property typically associated with vehicle repairs; they observed tires, tools and other equipment needed to repair vehicles; and, they observed Landowner's son attending to vehicles under either the hood or the vehicles. The ZHB stated the only logical conclusion it could draw from this testimony was that Landowner's son regularly repaired multiple vehicles on the subject property, and Landowner allowed these activities to occur. The ZHB determined that, "under a very strict reading of the [z]oning [o]rdinance definition," an unlawful automobile repair use was conducted on the subject property. Concl. of Law No. 18.

The ZHB acknowledged that the zoning ordinance does not prohibit a landowner from working on his own vehicle "or even doing minor repairs to the

---

[3] The zoning enforcement notice also alleged Landowner had a temporary carport on the subject property in violation of the zoning ordinance; however, Landowner removed the carport prior to the hearing rendering this alleged violation moot. F.F. No. 17.

3

cars of friends and family on his or her property." Concl. of Law No. 19. However, it determined the automobile repair activity occurring on the subject property, was "well beyond what a reasonable person would envision as incidental to a private dwelling." Concl. of Law No. 22 (internal quotation omitted). To that end, the ZHB determined, although Landowner and her son own six vehicles, several more, nearly double at times, were consistently at the subject property, and Landowner's son performed repairs on all of these vehicles. The ZHB stated: "Based upon the foregoing, the [ZHB] concludes that the totality of [Landowner's] and [her son's] motor vehicle repair activities, even if simply on their own [six] vehicles, well exceeds a level customarily associated with a residential dwelling." Concl. of Law No. 26. As a result, the ZHB denied Landowner's appeal of the enforcement notice. Landowner appealed to the trial court.

Without taking additional evidence, the trial court reversed. It determined the ZHB abused its discretion in upholding the enforcement notice. Specifically, the trial court determined the evidence presented before the ZHB was insufficient to support a determination that an automobile repair use as defined by Section 27-305(J21) of the zoning ordinance was conducted on the subject property. The trial court also rejected the Township's assertion that the enforcement notice should be upheld on the ground that repair activities occurring on the subject property went beyond what is normally associated with a residential use. Instead, the evidence, viewed as a whole, did not support a determination that an unlawful automobile repair use as defined by Section 27-305(J21) was occurring on the subject property, which was the sole ordinance violation pursued

4

by the Township. Thus, the trial court reversed the ZHB's decision and dismissed the enforcement notice. The Township now appeals to this Court.

## II. Discussion
### A. Contentions

On appeal,[4] the Township first argues the trial court made two major errors in reviewing Landowner's appeal of the ZHB's decision. First, the trial court failed to correctly determine the actual issue before it. The Township contends the trial court viewed this appeal as involving the question of whether the activities conducted on the subject property met the definition of a "J21 Automobile Repair" use instead of correctly recognizing this appeal actually involved determining whether the activities occurring on the subject property were permitted in the RR district. Second, the trial court reviewed the appeal *de novo* instead of utilizing the appropriate abuse of discretion or error of law standard of review.

When the correct standard of review is applied, the Township argues, this Court should conclude the record contains substantial evidence that supports the ZHB's determination that Landowner conducted activities on the subject property that were not permitted in the RR district. The record shows: Landowner conducted (or allowed to be conducted) auto repair activities on multiple cars on the subject property; many more cars than those owned by Landowner and her son were repaired on the subject property; many of those cars would only be seen on

---

[4] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

5

the subject property once and never again; and, Landowner's son performed repair work on vehicles other than those owned by Landowner and her son. The Township maintains Landowner did not rebut the evidence concerning repair activities on the subject property. Landowner did not present any witness testimony; rather, she only presented documents corresponding to six vehicles that she allegedly owns. Landowner presented no witness' testimony to verify the authenticity of the documents concerning car ownership.

Moreover, the Township argues the ZHB credited all of the evidence the Township presented. As such, Landowner did not rebut the Township's case. In light of these circumstances, the Township maintains, it is clear the ZHB correctly decided that Landowner conducted unlawful activities on the subject property. The ZHB's determination is supported by substantial evidence. Thus, this Court should reverse the trial court's order and reinstate the ZHB's decision dismissing Landowner's appeal.

Landowner responds that the Township must be held to the charge it filed against her, stated in the enforcement notice it crafted, namely that Landowner allegedly unlawfully operated a "J21 Automobile Repair" use. Landowner asserts the Township may not now shift its position to a different "violation," simply because it lacked the necessary proof to sustain the ordinance violation charged.

Landowner contends that where a municipality initiates and pursues an enforcement proceeding against a property owner under Section 616.1 of the

6

Pennsylvania Municipalities Planning Code (MPC),[5] the property owner is entitled to notice of the specific zoning ordinance provision allegedly violated. Here, Landowner asserts, a shift from the J21 Automobile Repair use charged to the now-claimed "well beyond" what the zoning ordinance "should" allow for a residential use, turns Section 616.1 of the MPC on its head. Appellee's Br. at 28.

Landowner maintains that over a 14-month period, the Township proved nothing more than: three cars not registered to the residents of the subject property were photographed on or near the subject property; Landowner's son enjoys working on vehicles at his house; and, other people park in the congested public streets in the Forest Park development. Landowner argues the objectors' remedy is not to collaborate with the Township in a seriously flawed enforcement proceeding. Indeed, the Township should have informed the neighbors of the obvious: Landowner is not in violation of the zoning ordinance.

Through its reply brief, the Township rejoins that Landowner's brief fails to address the core issue here—whether the record contains substantial evidence to support the ZHB's determination that Landowner conducted activities on the subject property that were not permitted in the RR district. The Township asserts Landowner attempts to deflect this Court's attention from the inadequacies of her appeal by raising a series of irrelevant issues.

---

[5] Act of July 31, 1968, P.L. 805, as added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10616.1.

## B. Analysis

This case originated with the filing of a zoning enforcement notice. Section 616.1 of the MPC, which governs enforcement notices, states, in relevant part (with emphasis added):

> (a) If it appears to the municipality that a violation of any zoning ordinance enacted under this act or prior enabling laws has occurred, the municipality shall initiate enforcement proceedings by sending an enforcement notice as provided in this section.
>
> * * * *
>
> (c) An enforcement notice shall state at least the following:
>
> * * * *
>
> (3) The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance.
>
> * * * *
>
> (d) In any appeal of an enforcement notice to the zoning hearing board, the municipality shall have the responsibility of presenting its evidence first.

53 P.S. §10616.1(a), (c)(3), (d). In an enforcement proceeding, the municipality bears the burden of proving a landowner violated the provision of the zoning ordinance charged. Hartner v. Zoning Hearing Bd. of U. St. Clair Twp., 840 A.2d 1068 (Pa. Cmwlth. 2004).

The issue of whether a particular use falls within a given category of a zoning ordinance is a question of law. In re Richboro CD Partners, L.P., 89 A.3d 742 (Pa. Cmwlth. 2014).

8

Here, the Township, through its zoning officer, issued an enforcement notice, which stated, in relevant part:

> **Automobile Repair Violation**
> As stated in the [zoning ordinance], §27-901, Use J21-Automobile Repair, is not a use permitted By Right in the RR … District.  Use J21 is defined in §27-305 as, an *Automobile repair garage*, including paint spraying and body and fender work, provided that all repair and paint work is performed within an enclosed building.  This use is only permitted by Special Exception in the C1 (Commercial), I (Industrial), and IO (Industrial/Office) Districts within [the] Township and is not permitted under any circumstances in the RR … District.

R.R. at 88a.  Although the enforcement notice set forth other alleged violations, before the ZHB, the zoning officer confirmed that "the only … issue is whether or not a J21 use is being operated on th[e] [subject] property[.]" R.R. at 10a; see also F.F. No. 19.

In turn, Section 27-305(J21) of the zoning ordinance states:

J. RETAIL AND SERVICE USES.

* * * *

J21. Automobile Repair.

    a.    <u>Definition</u>.  <u>Automobile repair garage, including paint spraying and body and fender work, provided that all repair and paint work is performed within an enclosed building</u>.

    b.    Regulations.

        1. All automobile parts, refuse and similar articles shall be stored within a building or enclosed area.

2. Vehicles awaiting repairs and junk vehicles may not be stored outdoors more than five days.

3. The buffer requirements of this Chapter shall be met.

Id. (emphasis added).

Here, the ZHB determined the credible evidence supported a finding that the activities occurring on the subject property constituted an "Automobile Repair" use that falls within Section 27-305(J21) of the zoning ordinance. Concl. of Law No. 14. Based on its review of the record, the trial court disagreed, concluding the evidence presented was insufficient to support a determination that the subject property was used for an automobile repair garage.

Specifically, the trial court explained, at the ZHB hearing, none of the witnesses offered testimony that Landowner or her son perform paint spraying or body or fender work, the intensity of activity contemplated in Section 27-305(J21). Further, the objectors' complaints arose primarily from normal vehicle noise rather than noise occurring as a result of repair work. Thus, although there was substantial evidence that Landowner and her son own six vehicles, all of which are often parked in their driveway or around the subject property, and that there were frequently other vehicles parked nearby, there was no evidence that Landowner or her son operated an automobile repair garage. Also, as the trial court explained, "there was unrebutted evidence presented to the [ZHB] that [Landowner's son] has been seen tinkering with cars and that there are tires stacked in [Landowner's] garage. This, again, is insufficient to prove that a J21 Automobile Repair Use has been occurring on [the] [subject] property." Tr. Ct., Slip Op., at 11-12.

10

In addition, the zoning officer was unable to offer testimony that automobile repair work similar to that specified in Section 27-305(J21) occurred on the subject property. Instead, the zoning officer testified she believed repair activities that rose to the level of a "J21 Automobile Repair" use occurred on the subject property as a result of "[t]he number of vehicles, vehicles being inside the temporary structure [(which was removed prior to the ZHB hearing)], different vehicles being inside the temporary structure, [and] vehicles coming and going ..." not as a result of her observation of repairs occurring on vehicles on the subject property. Tr. Ct., Slip Op., at 5; R.R. at 12a. Indeed, the zoning officer never observed any automobile repair activities despite the fact that she visited the subject property on multiple occasions to investigate the objectors' complaints. R.R. at 12a. Moreover, the zoning officer could not point to any zoning ordinance provision that prohibits a landowner from performing automobile repair activities such as oil changes or changing flat tires at his own home. Id. Also, the zoning officer could not identify any ordinance provision that would prohibit a resident from working on another person's vehicle on his property. Id.

Further, although one objector testified he observed Landowner's son performing work on automobiles, there was no evidence that any paint spraying, body or fender work, or other similar work occurred on the subject property. Although the plain language of Section 27-305(J21) uses the term "including" before setting forth two specific examples of the type of work performed in an automobile repair garage, suggesting the list is not exhaustive, it is also clear the term "including" is not to be interpreted in its broadest sense. Indeed, as our Supreme Court explains:

11

> [I]t is widely accepted that general expressions such as 'including,' or 'including but not limited to,' that precede a specific list of included items are to be considered as words of enlargement and not limitation. Indeed, such a list of specific items is not meant to be exclusive of all items other than those specifically named. Yet, these terms also should not be construed in their widest context. Under our venerable statutory construction doctrine of *ejusdem generis* ('of the same kind or class'), where specific terms setting forth enumeration of particular classes of persons or things follow general terms, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. <u>In sum, the presence of such a term as 'including' in a definition exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature.</u>

Dep't of Envtl. Prot. v. Cumberland Coal Res., LP, 102 A.3d 962, 976 (Pa. 2014) (citations omitted).

Here, the word "including" in Section 27-305(J21) is followed by two specific examples, "paint spraying" and "body and fender work." In its decision, the ZHB disregarded that portion of the provision that sets forth the two enumerated examples, and it made no determination that the activities occurring on the subject property were either within those enumerated examples or of the same general class or nature as those examples.[6] The ZHB also overlooked Section 27-

---

[6] Objector Joe O'Donnell, who formerly lived across the street from the subject property, testified he observed Landowner's son use a blowtorch. R.R. at 21a. However, O'Donnell moved from his former home in June 2013, <u>id.</u>, approximately five months before issuance of the zoning enforcement notice here and eight months before the ZHB hearing. Further, he offered no testimony as to the type of work Landowner's son performed using the blowtorch. Thus, while the ZHB made a finding summarizing O'Donnell's testimony, <u>see</u> F.F. No. 69, it did not clearly base its ultimate determination on this testimony. <u>See</u> Concls. of Law Nos. 14-18.

12

305(J21)'s language that "all repair and paint work [be] performed <u>within an enclosed building</u>." <u>Id.</u> (emphasis added). Further, Section 27-2901 of the zoning ordinance requires a minimum of two off-street parking spaces "<u>for each service bay</u>" for an automobile repair garage under Section 27-305(J21). <u>Id.</u> (emphasis added). Thus, Section 27-2901 confirms that an "automobile repair garage" is conducted in an enclosed building. In sum, in determining the activities conducted on the subject property constituted an unlawful automobile repair garage, the ZHB disregarded portions of the express definition of an "Automobile Repair" use set forth in Section 27-305(J21).[7] In so doing, the ZHB erred. <u>See</u>, <u>e.g.</u>, <u>McMahon v. Kingston Twp. Bd. of Supervisors</u>, 771 A.2d 96, 99 (Pa. Cmwlth. 2001) ("An ordinance must be construed to give effect to all its provisions.")

In short, our review of the testimony before the ZHB supports the trial court's determination that the ZHB abused its discretion because the record lacks sufficient evidence that the activities occurring on the subject property rose to the level of an automobile repair garage as set forth in Section 27-305(J21). Indeed, although there was some testimony by objectors that Landowner's son performed repair work on vehicles other than those owned by Landowner or her son, the testimony did not show the activities occurring on the subject property amounted to an automobile repair garage use. Thus, the trial court did not apply the wrong

---

[7] More particularly, in interpreting Section 27-305(J21), the ZHB stated: "By defining an 'automobile repair' use as an 'automobile repair garage,' the [z]oning [o]rdinance offers a circular definition. As such, the definition is clearly premised upon a common sense prior understanding that an 'automobile repair' use or garage is a facility where cars are fixed." Concl. of Law. No. 11. Thus, the ZHB did not consider the specific examples set forth in Section 27-305(J21), or the fact that the provision expressly contemplates "that all repair and paint work [be] performed in an enclosed building." <u>Id.</u>

13

standard of review; rather, it determined the ZHB erred in determining the activities conducted on the subject property constituted an automobile repair garage as set forth in Section 27-305(J21), which was the only issue before the ZHB.

In addition, in determining the testimony presented led to a conclusion that the activities occurring on the subject property amounted to an "Automobile Repair" use described in Section 27-305(J21), the ZHB stated: "These facts and that conclusion alone would, under a very strict reading of the [z]oning [o]rdinance definition, qualify the activities as an 'automobile repair' use." Concl. of Law No. 18 (emphasis added). Again, the ZHB's determination is in error. To that end, "zoning ordinances are to be liberally construed to allow the broadest possible use of land." U. Salford Twp. v. Collins, 669 A.2d 335, 336 (Pa. 1995). Thus, "restrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor." Rabenold v. Zoning Hearing Bd. of Palmerton Twp., 777 A.2d 1257, 1263 (Pa. Cmwlth. 2001) (quoting Gilden Appeal, 178 A.2d 562, 566 (Pa. 1962)). Here, the ZHB utilized the opposite approach in determining the activities qualify as an "automobile repair" use, which is prohibited in the residential zoning district in which the subject property lies.

For all these reasons, the trial court did not exceed its authority when it determined the ZHB erred in finding the Township met its burden of proving that Landowner operated an unlawful "Automobile Repair" use as defined by Section 27-305(J21) of the zoning ordinance.

14

Additional support for the trial court's conclusion is found in the structure of the zoning ordinance. "[A]s a general principle … the structure of the zoning ordinance itself provides the best guide to its interpretation." Crary Home v. DeFrees, 329 A.2d 874, 877 (Pa. Cmwlth. 1974) (citing Robert S. Ryan, PENNSYLVANIA ZONING LAW & PRACTICE, §4.2.1).

Section 27-305 of the zoning ordinance contains the Township's "Use Definitions and Regulations" followed by the regulations applicable to the following general use categories: agricultural, residential, institutional, educational, recreational, municipal, utility, residential accessory, office, retail and service, industrial, and general accessory. Subsection J of Section 27-305 sets forth "Retail and Service Uses." Virtually all of the enumerated "Retail and Service Uses" appear to contain some form of commercial or business component.[8] Here, the ZHB found that there was no proof that the activities occurring on the subject property contained a commercial business component. F.F. No. 77.

Finally, in its brief to this Court, the Township asserts:

_____

[8] Specifically, "Retail and Service Uses" in Section 27-305(J) of the zoning ordinance are: retail stores; adult commercial/adult entertainment; service business, including, but not limited to, barber, beautician, laundry and dry cleaning, shoe repair, tailor, photographer, travel agency and photocopy center (excluding auto repair); financial establishments; funeral homes; eating places; taverns; indoor entertainment; theaters; indoor athletic clubs; amusement halls or arcades; outdoor entertainment; outdoor motion picture establishments; motels; guest houses; repair shops; laundromats; service stations or car washes; automobile sales; automobile accessories; truck and farm equipment sales; shopping centers; mini-warehouses; accessory dwellings that are clearly subordinate to institutional, commercial, consumer service or office uses; nonresidential conversions; office supplies and equipment sales and services; package delivery services; photocopying services; planned community center mixed uses; and, neighborhood commercial centers.

15

> Whether or not the activities on [the subject property] met the requirements for a J21 Use is not the issue that was before the [ZHB], the [trial court], or this Court. <u>The question in this [a]ppeal is whether or not the activities occurring on [Landowner's] property were permitted within the RR Zoning District. Whether or not these activities actually fall under the definition of a J21 Use is inconsequential. The Enforcement Notice against [Landowner] only referenced the J21 Use as a shorthand way of referencing and categorizing all of the activities occurring upon her Property that were not allowed within this Zoning District.</u>

Appellant's Br. at 13 (emphasis added); <u>see</u> <u>also</u> Appellant's Br. at 17 ("The [e]nforcement [n]otice classified the repair activities on the [subject] [p]roperty as a J21 Use to show that such activities are not allowed within the RR [z]oning [d]istrict. <u>Just because these repair activities do not neatly fall under this [u]se, does not mean [Landowner] is not in violation of the [z]oning [o]rdinance and can continue these activities.</u>") (emphasis added).

The flaw in this repeated assertion is that before the ZHB the Township made clear that the only issue was whether a "J21 use [was] being operated on [the] [subject] property." R.R. at 10a. Pursuant to Section 616.1(c)(3) of the MPC: "An enforcement notice shall state … [t]he specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance." <u>Id.</u> In the enforcement notice and at the hearing the Township made clear that the sole issue before the ZHB was whether an automobile repair use was occurring on the subject property. R.R. at 10a, 88a-89a; <u>see</u> F.F. No. 19. The Township could not then subsequently attempt to amend the enforcement notice to include any purported conduct not permitted in the RR district.

16

### III. Conclusion

For these reasons, we affirm the order of the trial court that reversed the ZHB's decision denying Landowner's appeal.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Laura Baltra     :
From the Decision of the New    :
Britain Township Zoning Hearing  :
Board                      :   No. 158 C.D. 2015
                               :
Appeal of: Board of Supervisors  :
of New Britain Township       :

# **O R D E R**

**AND NOW**, this 14th day of December, 2015, the order of the Court of Common Pleas of Bucks County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Laura Baltra From : 
the Decision of the New Britain : 
Township Zoning Hearing Board : 
                                   : 
Appeal of: Board of Supervisors of : No. 158 C.D. 2015
New Britain Township : Argued: October 6, 2015


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


<u>OPINION NOT REPORTED</u>


DISSENTING OPINION BY
PRESIDENT JUDGE PELLEGRINI             FILED: December 14, 2015


Because I find that substantial evidence supports the New Britain Township (Township) Zoning Hearing Board (Board)'s determination that Laura Baltra's property was used for automobile repair activities in violation of the Township Zoning Ordinance, I would reverse the Court of Common Pleas of Bucks County's (trial court) order dismissing the Enforcement Notice issued against her and reinstate the Board's order upholding it.


**I.**

Ms. Baltra owns property in the Township's Residential (RR) Zoning District, in which automobile repair uses are prohibited pursuant to the Township

Zoning Ordinance. In this regard, Section 27-305 of the Zoning Ordinance defines a J21 use as follows:

J21. Automobile Repair

a. Definition. Automobile repair garage, including paint spraying and body and fender work, provided that all repair and paint work is performed within an enclosed building.

b. Regulations.

1. All automobile parts, refuse and similar articles shall be stored within a building or enclosed area.

2. Vehicles awaiting repairs and junk vehicles may not be stored outdoors more than five days.

3. The buffer requirements of this Chapter shall be met.

Township Zoning Ordinance § 27-305.

## II.

Initially, I agree with the majority's finding that the only violation the Township enumerated in the Enforcement Notice and presented before the Board was Ms. Baltra's alleged J21 use of the property. Therefore, like the majority, I would not address the Township's broader contention that the activities occurring on the property were disallowed within the RR District, as a whole. Aside from the fact that this contention was not advanced below, it attempts to shift the Township's burden of proving the existence of a violation under the Zoning Ordinance, *see Hartner v. Zoning Hearing Board of Upper St. Clair Township*, 840

DRP - 2

A.2d 1068, 1070 (Pa. Cmwlth. 2004), to Ms. Baltra to prove her compliance with uses permitted in the zoning district.

Further, I agree with the majority's interpretation that Section 27-305(J21) does not limit "[a]utomobile [r]epair uses" to "paint spraying and body and fender work" as the trial court found, but rather, includes those activities as examples of a broader class of activities that qualify under that use. Township Zoning Ordinance § 27-305. As the majority aptly notes, as per *Department of Environmental Protection v. Cumberland Coal Resources, LP*, the phrase "including paint spraying and body and fender work" in the definition of an automobile repair use should not be construed as an exhaustive list but merely as examples of a general class to which qualifying activities must belong. 102 A.3d 962, 976 (Pa. 2004).

However, I disagree with the majority's assessment that substantial evidence does not support the Board's finding that the automobile-repair activities occurring on the property qualified as a J21 Automotive Repair Use. To this end, the following testimony was presented to and credited by the Board.

Township Zoning Officer Devan Ambron stated that she investigated the conditions at the property on numerous occasions and photographed her findings between June 2013 and February 2014. During this time, she regularly observed a red Chevy pickup truck, white minivan, black conversion van, and black pickup truck present at the property, with a gold Jaguar, another gold-colored car, a white car, and an additional truck appearing intermittently. When presented with six (6) vehicle titles and current registrations on cross-examination, Zoning

Officer Ambron admitted that the following vehicles were owned by and registered to an occupant of the property: 2010 Chrysler, 2001 Chevrolet, 1995 Jaguar, 1990 Chevrolet truck, 1996 Chevrolet truck, and a 1999 Ford sedan. On re-direct, Zoning Officer Ambron recalled observing stacked tires in Ms. Baltra's driveway.

Next, Brian Coller, a neighbor who has lived in Ms. Baltra's development for seventeen (17) years, recalled that Ms. Baltra and her son owned six (6) vehicles, but stated that "during the week, any given week for the past at least year and a half, probably even longer than that, there will be an extra two or three cars each night on Bristol Road extension," with "anywhere between eight and ten, maybe even 12 cars" being present on the weekends. (Reproduced Record [R.R.] at 16a.) With respect to the six (6) vehicles that generally are present, Mr. Coller testified, "sometimes the—all six are there, sometimes they're not, sometimes they're in the yard, sometimes they're other places. There are always other cars there for extended periods of time, not just one night. They're there for multiple days." (*Id.*) Mr. Coller further testified that he has observed and heard Ms. Baltra's son, Mr. Gadziala, working on cars other than the ones that they own at the property, usually inside of a temporary structure.[1]

Additionally, Joe O'Donnell, who lived directly across the street from Ms. Baltra from November 2011 until June 2013, stated that he observed Mr. Gadziala working on vehicles other than the ones he owned. He testified that when he lived nearby, he regularly saw twelve (12) to fifteen (15) vehicles at the

---

[1] Prior to this appeal, a temporary structure was erected on Ms. Baltra's property. Although Ms. Baltra was initially cited for installing it without a zoning permit, that portion of the Enforcement Notice was rendered moot when the structure was subsequently removed.

property and recalled "a lot of noise," including screeching tires and cars backfiring as a result of the repairs, sometimes as early as 4:00 AM, which prompted him to notify the police. (*Id.* at 20a.) He stated that Mr. Gadziala used many tools, including a blow torch and car jacks, to elevate the vehicles so that he could work underneath them. Although he stated that he often observed car parts in the driveway, he did not see any deliveries taking place and had no information regarding whether a business or retail use was being conducted on the property.

Moreover, Jennifer Steinhauser testified that her family moved into the house across the street from Ms. Baltra in June 2013. She stated that she personally observed Mr. Gadziala working on vehicles other than those he and his mother owned, recalling, "There's often times when he is working on different cars in the driveway. Underneath the tent or even now without the tent, I've seen him out there working on cars, different cars." (*Id.* at 22a.)

Although she did not see parts being delivered to the property, she described the conditions:

> [T]here are car parts. I've seen tires stacked in the garage. Often it was at night. So the tent was lit up, so you could see pretty well right into it all different times of the night, two in the morning, two o'clock in the afternoon. It was different, you know, almost every time.

(*Id.* at 23a.) Ms. Steinhauser estimated that with respect to the vehicles that were not owned by Ms. Baltra or her son, there was turnover every week or two. Like Mr. O'Donnell, Ms. Steinhauser testified that she had no information that a business or other commercial enterprise was being conducted on the property.

This testimony, when ascribed the credibility and weight afforded by the Board, constitutes substantial evidence supporting the Board's conclusion that automobile repair activities were occurring on Ms. Baltra's property. Indeed, it establishes that between six (6) and nine (9) vehicles which were not owned by Ms. Baltra or her son are generally parked at the property and that Mr. Gadziala openly works on them by using a car jack to get underneath them or by popping their hoods. While repairing the vehicles, Mr. Gadziala test drives them, causing noise when their tires screech or they backfire. Although Mr. Gadziala initially performed these activities in an enclosed structure, that structure was recently removed, and he now performs the activities in the driveway, outside of the garage where he stores stacks of tires and other tools he uses. Although the number of excess vehicles present on the property is generally consistent, the particular vehicles present change every week or two as Mr. Gadziala removes certain vehicles from the property and drives others to the property. To the extent the trial court and this Court found otherwise, they have substituted their own judgment for the Board's discretion.

Nonetheless, emphasizing that automobile repair is defined as "Automobile repair garage…provided that all repair and paint work is performed within an enclosed building," the majority concludes that Ms. Baltra's property is not used for automobile repair services because there is no evidence of record to indicate that automobile repair activities took place in an enclosed building.[2]

---

[2] Ms. Baltra did not raise this argument, but the majority addressed it *sua sponte*.

Notably, Ms. Steinhauser testified that at first, she observed Mr. Gadziala working on various vehicles "in the driveway," "[u]nderneath the tent." (*Id.* at 22a.) After the temporary structure was removed, she stated that Mr. Gadziala continued to work on vehicles parked in the driveway, with tires being stored in the garage. Therefore, it is clear that at the outset, automobile repair work was being performed within an enclosed area on Ms. Baltra's property— namely, the enclosed structure. I would not allow the landowner to avoid enforcement simply by removing the enclosed structure and continuing to perform the same repair activities in the driveway, particularly where the testimony establishes that a garage on the property houses tires and other equipment used for the repairs. Such a holding enables owners to circumvent Township Zoning Ordinance § 27-305(J21) and to convert their automobile-repair activities to non-repair activities simply by moving their activities from within an enclosed structure such as a garage to a few feet outside the enclosed structure.

Furthermore, the majority highlights that the J21 use is a subcategory of a broader section entitled "Retail and Service Uses," with "[v]irtually all" subcategories containing "some form of commercial of business component." (Majority Opinion, at 15.) While I agree that there is no evidence that the activities occurring on the Baltra property were performed in exchange for money, Township Zoning Ordinance § 27-305(J21) does not contain a "commercial business component." (*Id.*)

In so construing this section, the majority reads the heading "Retail and Service Uses" as if it were entitled "Retail Service Uses," effectively reading out the distinction. *But see* Merriam-Webster's Collegiate Dictionary 1137 (11th

ed. 2004) (defining "service" as "**2a:** the work performed by one that serves <good~> **b:** help, use, benefit <glad to be of~> **c:** contribution to the welfare of others **d:** disposal for use <I'm entirely at your~>…. **4:** the act of serving: as **a:** a helpful act <did him a ~> **b:** useful labor that does not produce a tangible commodity… **7a:** a facility supplying some public demand <telephone ~s> <bus ~s> **b:** a facility providing maintenance and repair….").  Based on the Ordinance's plain language, a J21 Use does not require the exchange of services for funds.

Accordingly, because I find substantial support for the Board's conclusion that automobile repair activities were occurring on Ms. Baltra's residential property in violation of the Township Zoning Ordinance, I would reverse the trial court's order and reinstate the Board's order upholding the Enforcement Notice and dismissing Ms. Baltra's appeal.

DAN PELLEGRINI, President Judge